IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA SCHWEPPE ) | |
| ) | |
| and ) | |
| ) | |
| JILLIAN ZURMUEHLEN ) | |
| ) | |
| PLAINTIFFS, ) | Case No.: |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| CITY OF PINE LAWN, MISSOURI ) | |
| ) | |
| and ) | |
| ) | |
| STEVEN BLAKENEY, ) | |
| ) | |
| DEFENDANTS. ) | |

## COMPLAINT

### PRELIMINARY STATEMENT

1. On November 5, 2014, Plaintiffs Lisa Schweppe ("Ms. Schweppe") and Jillian Zurmuehlen ("Ms. Zurmuehlen") were drugged and abducted from an establishment in St. Charles by Defendant Steven Blakeney ("Defendant Blakeney"). When they regained consciousness, they were in Defendant Blakeney's home in Oakville, Missouri. At the time, Defendant Blakeney was a sworn peace officer employed by Defendant City of Pine Lawn. He had the rank of Lieutenant and was a supervisor and commander.

2. After he drugged Plaintiffs, Defendant Blakeney summoned a Pine Lawn police officer to provide a police escort as Defendant Blakeney removed the women from St. Charles to at least one bar in the City of St. Louis and then to his home.

3.      Defendant Blakeney has a long history of misconduct and malfeasance. Pine Lawn knew about the many complaints against Defendant Blakeney and not only failed to take corrective actions but further enabled Defendant Blakeney in his nefarious travels by promoting him to Corporal, Sergeant and, ultimately, Lieutenant.

4.      This is a civil action for violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

## PARTIES

5.      Plaintiff Lisa Schweppe, is, and at all times material hereto has been, a resident of the City of St. Charles, State of Missouri.

6.      Plaintiff Jillian Zurmuehlen, is, and at all times material hereto has been, a resident of the City of St. Charles, State of Missouri.

7.      Defendant City of Pine Lawn, Missouri, is a body politic and corporate organized and existing pursuant to Missouri law.

8.      Defendant Steven Blakeney was a sworn law enforcement officer who was employed by Defendant City of Pine Lawn. During his tenure at Pine Lawn, he was promoted to Corporal, Sergeant, and, Lieutenant. His actions described herein were done under color of law.

## JURISDICTION AND VENUE

9.      This cause is brought pursuant to 42 U.S.C. §1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendant is located, and all of the incidents giving rise to this suit occurred, in this judicial district.

2

## FACTS

### *The Incident Involving Plaintiffs*

10. Plaintiffs were patrons at Tony's On Top in St. Charles when they encountered Defendant Blakeney.

11. Ms. Schweppe is a police officer and had met Defendant Blakeney a few months prior when she was working on Main Street in St. Charles during the Ferguson unrest. Defendant Blakeney had introduced himself at that time as "Lieutenant Blakeney" and gave Ms. Schweppe his card.

12. After recognizing Ms. Schweppe, Defendant Blakeney invited Plaintiffs to join him at the end of the bar and insisted that they allow him to pay for the drinks that Plaintiffs had ordered.

13. Defendant Blakeney then ordered shots for the three of them, which Plaintiffs drank.

14. Shortly after consuming the shots, each Plaintiff blacked out. As they later reflected on the evening, they realized that they each blacked out at the same time.

15. Plaintiffs regained consciousness at approximately the same time around 4:00 a.m. When they did, they were in Defendant Blakeney's home in Oakville, Missouri.

16. Ms. Zurmuehlen recalls screaming and Ms. Schweppe recalls hearing the screams of Ms. Zurmuehlen.

17. They immediately asked where they were and how they got there. Ms. Zurmuehlen wanted to call the police and Defendant Blakeney responded that he was the police.

18. Defendant Blakeney told Plaintiffs that he had an 11:00 a.m. appointment and that he would take them home at that time.

19. Ms. Zurmuehlen was very distraught and insisted that they leave immediately.

20. Defendant Blakeney then summoned a subordinate Pine Lawn Police Officer, P.O. Rinck, to come to his home and transport the women back to St. Charles.

21. While awaiting Rinck's arrival, Defendant Blakeney told the women that they had left the St. Charles establishment and traveled to the City of St. Louis, with a police escort, to another bar, and then to his home.

22. The women immediately went to sleep after arriving home and when they awoke and discussed the events, they realized that each of them had blacked out at the same time based on the last events that each recalled before losing consciousness.

### *Defendant Blakeney's History as a Pine Lawn Law Enforcement Officer*

23. Defendant Blakeney has a long history of misconduct, both while employed by Pine Lawn, and before, regardless of whether or not he was officially "on duty."

24. Defendant Blakeney considered himself to always be "on duty" whether or not he was working for Pine Lawn. As such, he has exercised law enforcement authority while outside the geographical boundaries of Pine Lawn and while not working a shift as a Pine Lawn police officer. *See* Exhibit A: *Judgment and Decree of Dissolution of Marriage*, at 12.

25. Defendant Blakeney's private vehicle was outfitted as a police vehicle complete with a light bar and other police equipment. *See id.*

4

26. There have been a large number of indicators that Defendant Blakeney is unfit to be a sworn law enforcement officer and that he engaged in misconduct, whether on duty or off duty.

   a. Defendant Blakeney was involuntarily separated from at least two police academies for misconduct.

   b. Defendant Blakeney left the Eastern Missouri Police Academy under threat of disciplinary action for misconduct that included reckless driving, exhibiting a poor attitude, changing clothes in public, and gawking at female students after being asked not to do so. *See* Exhibit B: Employment Report from New Athens Police Dep't, at 92–108.

   c. In 2006, Defendant Blakeney was charged with 2nd degree Sexual Misconduct and Supplying Intoxicating Liquor to a Minor based on accusations that he had drugged and engaged in sexual contact with a fifteen-year-old girl. During this investigation, authorities discovered that Defendant Blakeney had been accused of various forms of sexual misconduct many times during his previous employment at a restaurant and bar. *See* Exhibit C: St. Charles Cnty Sheriff's Dep't Warrant Application.

   d. In 2008, Defendant Blakeney was terminated as a police officer with the New Athens Police Department after two officers complained to supervisors about Defendant Blakeney's behavior that they described as overly aggressive. New Athens officials also found that Defendant Blakeney had been dishonest on his application for employment. *See* Exhibit B, at 18, 85–91.

5

e. Defendant Blakeney was reported by a female police officer for inappropriate and continued advances, including following the female officer to places where Defendant Blakeney knew she would be, staring at the female officer's back side, and attempting to instigate conflict with the female officer's boyfriend. *See* Exhibit D: Letter from Chief Scott Ford to Chief Rickey Collins.

f. Defendant Blakeney was arrested for forcible rape in 2012, and later charged with Sexual Assault Deviate. The victim told police that Defendant Blakeney had showed her his badge and gun, and that she felt afraid. The victim also believed that she had been drugged. *See* Exhibit E: St. Louis Metropolitan Police Incident Report.

g. Defendant Blakeney tested positive for cocaine in 2012, while employed by the Pine Lawn Police Department. *See* Exhibit F: Drug Screen Release of Info. and Lab Report.

h. Pine Lawn resident Mary Sykes ("Ms. Sykes") experienced a period of constant harassment and abuse by Defendant Blakeney and subordinate officers. In one incident, Defendant Blakeney arrested Ms. Sykes for trespassing while she was in her sister's home. Defendant Blakeney was wearing pajama pants at the time and bragged that it was his day off. *See* Exhibit G: Dep't of Justice Pine Lawn Investigation–Mary Sykes, with Witness Statements.

i. Ms. Sykes also complained of having been placed under "Blakeney law," which meant that if she or her family members left her home, they would be issued citations. According to Ms. Sykes, Defendant Blakeney would order

officers to write citations or lose their jobs. *See* Exhibit H: Mary Sykes Complaint Letter to Public Officials.

j. Franshada Johnson was arrested by Defendant Blakeney and reported feeling sexually harassed when Defendant Blakeney told her that she looked better in her "street clothes" than in the orange jumpsuit provided by the Pine Lawn jail. *See* Exhibit I: Dep't of Justice Pine Lawn Investigation–Franshada Johnson.

k. Franshada's sister, Rashada Johnson, witnessed inappropriate comments directed from Defendant Blakeney to her sister that she considered sexual harassment. Defendant Blakeney also referred to Rashada Johnson and others as "black bitches." *See* Exhibit J: Dep't of Justice Pine Lawn Investigation–Rashada Johnson.

l. Defendant Blakeney shot Roosevelt DeFrance's dog and gave him a five hundred dollar citation for damage to his roof. *See* Exhibit K: Dep't of Justice Pine Lawn Investigation–Roosevelt DeFrance.

m. According to Michael Bland ("P.O. Bland"), a fellow police officer, Defendant Blakeney removed a Beretta from an evidence locker, held it to P.O. Bland's head, and asked if he had a final wish. P.O. Bland reports that Defendant Blakeney issued the same threat to P.O. Rinck. *See* Exhibit L: Memorandum of P.O. Michael Bland.

n. P.O. Bland also reported that Defendant Blakeney was regularly intoxicated on duty, patrolled outside of his jurisdiction, drove at recklessly high speeds for no reason, and stopped cars without lights or markings on his vehicle

7

and without probable cause. P.O. Bland also witness Defendant Blakeney carrying his firearm outside of the City of Pine Lawn. *See id.*

o. Defendant Blakeney regularly switched out the license plates on his vehicle to obscure his wrongdoing. *See* Exhibit M: Email between City Administrator Brian Krueger and Michael Krupp.

p. Officer Petrov ("P.O. Petrov") of the Pine Lawn Police Department reported that on approximately ten occasions, Defendant Blakeney ordered P.O. Petrov to escort Defendant Blakeney from bars and other establishments not located within their jurisdiction while on duty. P.O. Petrov twice escorted Defendant Blakeney through St. Louis to the Illinois state line so that Defendant Blakeney could visit strip clubs. Defendant Blakeney told P.O. Petrov that officers who did not do what he ordered were fired. *See* Exhibit N: Memorandum of P.O. Petrov.

q. A group of Pine Lawn residents filed a complaint with several state and county officials stating that Defendant Blakeney led other officers in routine violations of residents' rights and use of excessive force. The complaint alleged, *inter alia*, that Defendant Blakeney harassed, intimidated, and threatened residents; used racial slurs and foul language toward minorities; and trespassed on property without warrants or probable cause. *See* Exhibit O: Concerned Citizens Complaint Letter to Public Officials.

r. In June 2011, while off duty and in his private vehicle, with his child in the vehicle, Defendant Blakeney stopped Kristen Moore on Interstate 55 in south

8

St. Louis County and aggressively berated and threatened her. He then initiated charges against her in state court.

s. On August 5, 2011, Ronald Zimmerman filed a complaint with Chief Collins of the Pine Lawn Police Department stating Defendant Blakeney had engaged in warrantless searches of his property. Defendant Blakeney also harassed him and made racially inflammatory remarks. *See* Exhibit P: Letter from Ronald Zimmerman to Chief Rickey Collins.

t. In July 2012, Defendant Blakeney arrested Elwyn Walls ("Mr. Walls") when he began recording Defendant Blakeney using his cell phone. All footage of the event was erased when the phone was later returned to Mr. Walls. *See* Exhibit Q: Dep't of Justice Pine Lawn Investigation–Elwyn Walls.

u. On another occasion in March 2013, Mr. Walls was standing in his yard when Defendant Blakeney shined a spotlight on him. Defendant Blakeney then dragged Mr. Walls into the street and arrested him for DWI and Drunk & Disorderly. *See id.*

v. In October 2012, Defendant Blakeney, in the presence of other officers, accosted and arrested Tremmel McCole and Sidney Sinclair as the men lawfully walked on a street. Defendant Blakeney brandished a shotgun and referred to the men, who are African-American, as "boy." Defendant Blakeney then physically abused Mr. Tremmel and when the other officers voiced or expressed disapproval, Defendant Blakeney made challenging statements to the other officers.

w. In December 2012, Defendant Blakeney and other officers responded to an alleged altercation at a school bus stop and in the process Defendant Blakeney

9

and at least one other officer assaulted Nakita Jackson, the aunt of one of the children allegedly involved in the altercation. Ms. Jackson had committed no offense and was merely present when Defendant Blakeney arrived at the residence. Defendant Blakeney struck her in the face and another officer threatened to taser her. She avoided being tasered by pleading with the officer to refrain from tasering her because was pregnant. When Ms. Jackson lodged a complaint against the officers, the then–Chief of Police made statements reflecting his knowledge of the misconduct, in general, of Defendant Blakeney and those under his supervision.

x. In May 2013, Defendant Blakeney insulted, threatened, and arrested Austin Johnson. Defendant Blakeney insisted that Mr. Johnson "move out of his city." Exhibit R: Dep't of Justice Pine Lawn Investigation–Austin Johnson.

y. In July 2013, while off duty, Defendant Blakeney encountered Anthony Telano driving on Interstate 70 in the downtown area after a Cardinals baseball game. Despite the fact that Mr. Telano had committed no offense, Defendant Blakeney arranged for a traffic stop of Mr. Telano in Pine Lawn and then assaulted Mr. Telano before causing the search of his car, its towing and the jailing of Mr. Telano. Mr. Telano was charged with violations that were later dismissed.

z. In April 2014, Defendant Blakeney initiated a traffic stop outside of Pine Lawn, near the Lumiere Casino, of Jordan Martner, a student at University of Missouri who was traveling to St. Louis to visit a friend. Defendant Blakeney ordered Ms. Martner from her car and began to search it. When Ms. Martner

10

inquired about the legality of the search, Defendant Blakeney declared that Ms. Martner had committed the offense of interfering with a police officer and ordered a custodial arrest of Ms. Martner. Then he made threatening statements. Defendant Blakeney ordered that Ms. Martner's car be towed and when she retrieved it, she discovered that her personal property had be damaged, apparently when Defendant Blakeney searched the car after it was impounded.

aa. In May 2014, Defendant Blakeney went to the home of Roslyn Brown ("Ms. Brown") wearing civilian clothing and looking for Ronald Zimmerman. Defendant Blakeney arrested Ms. Brown when she could not provide Mr. Zimmerman's location. Defendant Blakeney then entered and conducted a warrantless search of Ms. Brown's home. Her minor daughter was questioned by police despite protestations from Ms. Brown. Both Ms. Brown and her daughter were taken to the police station. Ms. Brown was neither informed of her rights or of the charge against her. *See* Exhibit S: Dep't of Justice Pine Lawn Investigation–Roslyn Brown; IV Amendment Violation Complaint; Witness Statements.

bb. In June 2014, the extended family of Eugene and Leola Hamilton, thirty year residents of the City of Pine Lawn, was at the Hamilton residence for an annual birthday party. Those present included young children. A Pine Lawn police officer arrived at the party and summoned some of the family members, who were outside, to discuss whether they had heard gunshots. James Jones informed the officer that they had not heard (or discharged) any firearm. Defendant Blakeney arrived and aggressively confronted Mr. Jones and accused

11

him of lying. Then Defendant Blakeney used a loudspeaker to profanely order everyone who was outside to go into the house. Mr. Jones informed Defendant Blakeney that there were young children present and that the profanity was unnecessary and inappropriate. Defendant Blakeney responded with more profanity. Mr. Jones was in the process of entering the house when Defendant Blakeney ran up from behind and tasered Mr. Jones. Multiple other officers also entered the yard and seized multiple people, none of whom committed any offense.

cc. On January 28, 2016, Defendant Blakeney was convicted of criminal civil rights charges for conspiring to cause the arrest of a Pine Lawn mayoral candidate in March of 2013 based on false allegations and without probable cause. *United States v. Blakeney*, No. 4:15-CR-00354-SNLJ (E.D. Mo. Jan. 28, 2016).

dd. Defendant Blakeney is currently facing state criminal charges in *State of Missouri v. Blakeney*, No. 1522-CR2561 (Mo. Cir. Div. 24 Jan. 12, 2016).

ee. Defendant Blakeney used police resources, including police equipment, to surveil his former wife and her fiancé. *See* Exhibit T: Anonymous Letter re: Blakeney Abuse of Power; Exhibit U: Guardian Ad Litem's Answer.

ff. Defendant Blakeney is the subject of multiple complaints lodged against him with the Peace Officer Standards and Training Commission, an arm of the Missouri Department of Public Safety.

gg. In response to claims of stalking by the fiancée of Defendant Blakeney's former wife, the Court entered an order of protection against Defendant Blakeney

12

that restricted his ability to carry a firearm. *See* Exhibit V: Michael Krupp Order of Protection.

hh. Among the many reasons provided by the New Athens Police Department for Defendant Blakeney's termination in 2008 was a signed statement by two fellow officers that Defendant Blakeney was "a firecracker waiting to explode and a lawsuit waiting to happen." *See* Exhibit B, at 86–87.

## COUNT I

### UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO UNITED STATES CONSTITUTION AGAINST DEFENDANT STEVEN BLAKENEY COGNIZABLE UNDER 42 U.S.C. § 1983

Plaintiffs, for their cause of action against Defendant Steven Blakeney in Count I, state:

27. Plaintiffs incorporate by this reference the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

28. Defendant Blakeney, acting under color of law, with the authority and power conferred upon him by his office and by his employer, Defendant Pine Lawn, unlawfully seized Plaintiffs.

29. Defendant Blakeney seized Plaintiffs by surreptitiously drugging them such that they were not conscious of their actions, environment or movements.

30. Defendant Blakeney then enlisted a subordinate Pine Lawn police officer in his nefarious plan to transport Plaintiffs to a bar located in the City of St. Louis and, ultimately, to his residence.

13

31. Defendant Blakeney relied on his status and power as a supervising and commanding officer to act with impunity in drugging Plaintiffs, abducting them, and moving about the community with the protection of a police escort.

32. The conduct of Defendant Blakeney was intentional and shocking to the conscience and in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

33. As a direct and proximate result of Defendant Blakeney's actions, Plaintiffs and each of them suffered damages.

34. The conduct of Defendant Blakeney was intentional, malicious, reprehensible and done with conscious disregard to the rights of Plaintiffs and therefore, Plaintiffs are entitled to recover punitive damages.

35. If Plaintiffs or either of them prevail, the prevailing party Plaintiff is entitled to recover attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE Plaintiffs pray for judgment against Defendant Blakeney for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT II

### UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO UNITED STATES CONSTITUTION AGAINST DEFENDANT CITY OF PINE LAWN, MISSOURI COGNIZABLE UNDER 42 U.S.C. § 1983

Plaintiffs, for their cause of action against Defendant City of Pine Lawn in Count II, state:

36. Plaintiffs incorporate by this reference the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

37. Defendant City of Pine Lawn is liable for the constitutional violation committed by Defendant Blakeney based on *Monell v. N.Y. Dep't of Soc. Svcs*, 436 U.S. 658 (1978), and its progeny.

38. Specifically, Defendant Pine Lawn knew of the serial misconduct of Defendant Blakeney and failed to take any action to correct his deviant conduct or to stop it.

39. Defendant City of Pine Lawn knew that Defendant Blakeney committed misconduct while off duty as well as while on duty.

40. Defendant City of Pine Lawn knew that Defendant Blakeney made unlawful arrests, while off duty as well as while on duty.

41. Defendant City of Pine Lawn knew that Defendant Blakeney conducted unlawful searches while off duty as well as while on duty.

42. Defendant City of Pine Lawn knew that Defendant Blakeney used excessive force while off duty as well as while on duty.

43. Defendant City of Pine Lawn knew that Defendant Blakeney engaged in sex-related misconduct while off duty as well as while on duty.

44. Defendant City of Pine Lawn knew that Defendant Blakeney had a history of disregarding the law and of disregarding the conventions of society in his conduct while off duty as well as while on duty.

45. Defendant City of Pine Lawn knew that Defendant Blakeney's off-duty misconduct was a result of his belief that he was never truly off duty and that he knew no

boundaries in the exercise of the authority conferred on him by virtue of his office and by virtue of his status as a Pine Lawn Police Officer.

46. Despite the knowledge that Defendant Blakeney was properly described as a "rogue cop," by any definition, Defendant Pine Lawn not only failed to exercise its authority and fulfill its duty to supervise, control and, where appropriate, discipline Defendant Blakeney; Pine Lawn failed in its duties with deliberate indifference.

47. Not only did Pine Lawn fail in its duties, but it also ratified and encouraged Defendant Blakeney's misconduct by promoting him at least three times, ultimately to the rank of Lieutenant where he exercised Chief of Police–type authority over the police department.

WHEREFORE Plaintiffs pray for judgment against Defendant City of Pine Lawn for compensatory damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

Respectfully submitted
February 24, 16

Blake A. Strode, MO68422
Thomas B. Harvey, MO61734

/s/ Edward J. Hall
Edward J. Hall, IA68562
*Of Counsel*

ArchCity Defenders
812 N. Collins St.
St. Louis, MO 63102
(855) 724-2489
bstrode@archcitydefenders.org
tharvey@archcitydefenders.org

*Attorneys for Plaintiffs*